UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FANNY "FEI FEI" GUNAWAN,                              MEMORANDUM
                              Plaintiff,              AND ORDER
                - against -
SAKE SUSHI RESTAURANT,                                09-CV-5018 (JO)
                              Defendant.
--------------------------------------------------------X

James Orenstein, Magistrate Judge:

        Plaintiff Fanny "Fei Fei" Gunawan ("Gunawan") has sued defendant Sake Sushi

Restaurant, Inc. (the "Restaurant") for its alleged failure to pay her the wages required under

federal and state law. Docket entry ("DE") 1 (Complaint). The Restaurant initially answered the

Complaint, DE 5, and the parties thereafter consented to refer the case to a magistrate judge for all

purposes including the entry of judgment. DE 7; *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Later,

after the parties had completed discovery and dispositive motion practice, the Restaurant fell out of

communication with its counsel and failed to participate in the submission of a joint pretrial order,

and has made no effort to participate in the proceedings since then. I therefore directed the Clerk to

strike the Restaurant's Answer and enter its default. *See* DE 32. Gunawan now seeks a default

judgment in her favor. DE 33. For the reasons set forth below, I grant Gunawan's motion and

award judgment against the Restaurant in the total amount of $68,431.84.

I.       Background

        The following recitation of facts is drawn primarily from allegations in the Complaint,

which are deemed to be true as a result of the Restaurant's default, *see Finkel v. Romanowicz*, 577

F.3d 79, 83 n.6 (2d Cir. 2009), as well as other uncontested evidence in the record. That record

includes the parties' submissions with respect to Gunawan's motion for summary judgment, which

the court decided prior to the Restaurant's default, *see Gunawan v. Sake Sushi Restaurant*, 2011

WL 3841420, at *1 (E.D.N.Y. Aug. 26, 2011), as well as Gunawan's uncontroverted submissions in support of the instant motion. DE 33.[1]

The Restaurant, located in Queens, New York, is an employer and an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"). Gunawan worked as a waitress at the Restaurant from May 2006 until approximately June 2007. *Gunawan*, 2011 WL 3841420, at *1; Complaint ¶ 5; DE 33-6 (Affidavit of Fanny "Fei Fei" Gunawan) ("Gunawan Aff.") ¶ 3. During that time she worked approximately 67 hours per week. Gunawan Aff. ¶ 5.[2] The Restaurant paid Gunawan a flat rate of $500 per month, regardless of the amount hours she worked; it also retained a "significant percentage" of Gunawan's tips paid via credit card and required her to share the remaining cash tips with her coworkers in the kitchen and sushi bar. Complaint ¶¶ 10, 12.[3]

On the basis of those facts, Gunawan filed the Complaint on November 16, 2009, in which she asserted two causes of action under the minimum wage and overtime provisions of the FLSA, as well as four additional claims under the labor laws of New York State. Complaint ¶¶ 13-28; *see*

---

[1] The summary judgment motion was decided by the Honorable Andrew L. Carter, then a United States Magistrate Judge in this district. Following Judge Carter's appointment as a United States District Judge for the Southern District of New York, the case was reassigned to me.

[2] Gunawan initially alleged that she worked approximately 72 hours per week, Complaint ¶ 8, but she has since submitted sworn affidavits in support of her summary judgment and default judgment motions attesting to the lower number cited above. DE 15 ¶ 5; Gunawan Aff. ¶ 5. In the Rule 56.1 statement she submitted with her summary judgment motion, Gunawan stipulated to an even lower figure of 63.25 hours. However, Gunawan made clear in her 56.1 statement that this lower figure represented the defendants' calculation of her hours, which "she [was] willing for the purposes of th[e] summary judgment motion to accept," rather than her own calculation. DE 13 ¶ 5 n.1.

[3] In determining the contested motion for summary judgment, the court found that there existed disputed questions of material fact with respect to both the Restaurant's wage payments and its practices concerning tips. *Gunawan*, 2011 WL 3841420, at *3. The Restaurant having later defaulted, it is no longer in a position to contest Gunawan's factual allegations, and I therefore accept those allegations as true for purposes of establishing liability.

29 U.S.C. § 201, *et seq.*; New York Labor Law ("NYLL") §§ 196-d, 650, *et seq.* In support of the claims under federal law, Gunawan asserted that "[a]t all relevant times, [the Restaurant] has been, and continues to be, 'employers' [sic] engaged in interstate 'commerce' and/or in the production of 'goods' for 'commerce,' within the meaning of [the] FLSA," Complaint ¶ 14, and that it committed all "alleged acts knowingly, intentionally, and willfully," *id.* ¶ 16.

As mentioned above, the Restaurant originally defended the case, and the parties litigated a motion for summary judgment brought by Gunawan. *See* DE 12 through 26. Judge Carter denied the motion, identifying several outstanding questions of fact requiring resolution – including, as relevant to this decision, questions regarding both "the appropriate statute of limitations and [the] period (if any) for which it should be tolled." *Gunawan*, 2011 WL 3841420, at *3. With respect to the statute of limitations issue, Judge Carter began by observing that the relevant period under the FLSA is two years, except when the violation is "willful," in which case the limitations period is extended an additional year. *Id.* at *2 (citing 29 U.S.C. § 255(a)). Because a claim for unpaid wages ripens on the date the employee should have been paid, and Gunawan alleged that her wages were paid on a monthly basis, Judge Carter held that Gunawan's wage claim first accrued when she received her first paycheck from the Restaurant in June 2006. *Id.* Judge Carter further observed that because Gunawan's

> Complaint was not filed until November 2009[,] [a]pplying the two year statute of limitations would result in the dismissal of her FLSA claims in their entirety. However, if the three year statute of limitations were applied, that portion of her claim[s] accruing on or after November 2006 (*i.e.*, those related to wages earned from October 2006 to June 2007) would be timely.

*Id.*; *see also*, *e.g.*, *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 446 (E.D.N.Y. 2009) (noting that "for the purposes of establishing the statute of limitations under the FLSA, a new

cause of action accrues with each payday following an allegedly unlawful pay period") (internal citation omitted).

Judge Carter's task in evaluating the statute of limitations question at that stage of the proceedings was complicated, however, by Gunawan's failure to argue that the longer limitations period applied in her case, notwithstanding the fact that the legal burden to show willfulness, and hence to prove her entitlement to it, belonged to her as the plaintiff. *Gunawan*, 2011 WL 3841420, at *2 (citing *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 1999)). Instead, Gunawan argued that the court should equitably toll the statute of limitations for the entire period of her employment, on the theory that the Restaurant's failure to post a notice of worker's rights, as required by 19 C.F.R. § 516.4, or to otherwise inform her of those rights, entitled her to such tolling. *Id.* at *2-3. Judge Carter rejected this argument, holding that "'the failure to provide an employee the notice required by the FLSA' … is insufficiently extraordinary [to justify the court's use of tolling] in the absence of 'some sort of deception.'" *Id.* at *3 (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 319 (S.D.N.Y. 2011)). He further noted that, in any case, because Gunawan had "testified that she learned of the [relevant labor] laws in June 2007 when she was fired[,]" "[e]ven if the statute of limitations were tolled until that date, her FLSA claims would [still] be untimely under the two year statute of limitations." *Id.*

In summary, then, as Judge Carter correctly observed, Gunawan cannot proceed with *any* portion of her FLSA claims without establishing the Restaurant's willfulness in violating that statute, and therefore her entitlement to the longer three-year limitations period. Secondly, even under the three-year limitations period, only "that portion of her claim[s] accruing on or after November 2006 (*i.e.*, [the portion] related to wages earned from October 2006 to June 2007)

would be timely" without the separate and additional application of equitable tolling to the period of her employment with the Restaurant. *Id.* at *2. Finally, Judge Carter held that the court cannot properly toll Gunawan's claims on the stand-alone basis of the Restaurant's failure to post a notice of worker's rights; rather, Gunawan must additionally demonstrate "some sort of deception" on the part of the Restaurant in order to earn the benefit of such tolling. *See id.* at *3.

Shortly after Judge Carter denied Gunawan's summary judgment motion, the Restaurant's owner, without any explanation, cut off contact with his attorney. When counsel's efforts to locate his client repeatedly failed, I directed the clerk to strike the Restaurant's answer and enter its default, and this motion for default judgment followed. *See* minute entries dated November 9, November 16, and December 6, 2011, and January 27, 2012; DE 32; DE 33.

II.      Discussion

      A.      Applicable Law

            1.      Default

When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see Romanowicz*, 577 F.3d at 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. Thus, with respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g.*, *Romanowicz*, 577 F.3d at 84;

*Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Levesque v. Kelly Commc'ns, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Hughes*, 449 F.2d at 63).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct. *Chun Jie Yin v. Kim*, 2008 WL 906736, at *3 (E.D.N.Y. Apr. 1, 2008) (citing *Anderson v. Mt. Clemens Potter Co.*, 328 U.S. 680, 687-88 (1946); *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

2.   <u>Federal And State Wage Laws</u>

The FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the legally mandated minimum regular wage) for hours worked above 40 hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). An employee who is paid partially through tips may be paid at a rate less than the minimum wage – that is, at a rate equal to the

6

minimum wage minus the "tip credit" – so long as the employer "(1) inform[s] the employee of the 'tip credit' provision of the FLSA, and (2) permit[s] the employee to retain all of the tips the employee receives." *Jin v. Pacific Buffet House,* 2009 WL 2601995, at \*4 (E.D.N.Y. Aug. 24, 2009); *see* 29 U.S.C. § 203(m).

The FLSA provides that an employer must "make, keep, and preserve" records of employee wages, hours, and employment conditions. 29 U.S.C. § 211(c). An employee bringing an action for unpaid overtime compensation under the FLSA has the burden of proving that he performed work for which he was not properly compensated. *S. New England Telecomms.*, 121 F.3d at 66-67 (citing *Mt. Clemens Potter Co.*, 328 U.S. at 687); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (citations omitted). If an employer fails to keep the required records, the plaintiff may meet this burden "'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *S. New England Telecomms.*, 121 F.3d at 66-67 (quoting *Mt. Clemens Potter Co.*, 328 U.S. at 687). A plaintiff may do so solely through his or her own recollection. *Rivera*, 497 F. Supp. 2d at 388 (citing *Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005)).

The NYLL mirrors the FLSA in most but not all respects. New York requires employers to pay at least a minimum hourly rate to employees and mandates a similar premium for overtime compensation, but also requires that an employee be paid a "spread-of-hours" premium equal to one hour of pay at the statutory minimum wage for each day an employee works over ten hours. NYLL § 650 *et seq.*; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12 §§ 142-2.2, -2.4. Like the FLSA, New York allows employers to credit a portion of an employee's tips against the minimum

wage when certain preconditions are met. In order to take such a "tip credit," an employer must "furnish to each employee a statement with every payment of wages listing ... allowances ... claimed as part of the minimum wage," and must "maintain and preserve for not less than six years weekly payroll records which shall show for each employee ... allowances ... claimed as part of the minimum wage." 12 NYCRR §§ 137-1.5, -1.9, -2.1, -2.2.[4] In addition, the employer may not retain any portion of an employee's tips. *See Hai Ming Lu v. Jing Fong Rest., Inc.*, 503 F. Supp. 2d 706, at 711 (S.D.N.Y. 2007) (holding that violations of NYLL § 196-d render an employer ineligible to receive a tip credit under New York law). Unlike the FLSA, New York law does not require the plaintiffs to show a nexus with interstate commerce or any minimum amount of annual sales. In addition, the state statute has a longer limitations period: claims under the FLSA must be brought within two years of a violation, unless the violation was willful, in which case the period is extended to three years; state law claims may be asserted up to six years after the alleged violation. *See* 29 U.S.C. § 255(a); NYLL § 663(3).

B.      Liability

Gunawan asserts six causes of action against the Restaurant. In her first and second claims, she alleges that the restaurant failed to pay her the statutory minimum wage as well as overtime wages in violation of the FLSA. Complaint ¶¶ 45-54. The third and fourth claims assert similar causes of action under the NYLL. *Id*. ¶¶ 69-76. The fourth and fifth causes of action likewise assert claims exclusively under the NYLL, based on allegations that the Restaurant improperly retained portions of Gunawan's tips and failed to pay spread-of-hours compensation for each day she worked over ten hours. *Id*. ¶¶ 55-68, 77-83. The Restaurant's default establishes as true Gunawan's

---

[4] These wage regulations have been repealed and superseded since the events of this lawsuit took place. *See generally* 12 NYCRR §§ 146-1.1 to -1.9.

allegations that they she did not receive statutorily prescribed wages and that the Restaurant retained portions of her tips. The extent to which she may recover such damages based upon these violations requires consideration of the applicability of the FLSA to her claims and whether those claims are timely.

1.   <u>Applicability Of The FLSA</u>

Under the circumstances of this case, in order to plead a cause of action under the FLSA, Gunawan must sufficiently plead that the Restaurant was, during the relevant period, "an enterprise engaged in commerce or in the production of goods for commerce[.]" 29 U.S.C. § 207(a)(1).[5] Notwithstanding the cases upon which Gunawan relies, *see* DE 36 (letter dated June 21, 2012), I conclude that the Complaint does *not* sufficiently plead that matter.

Gunawan contends that her allegation that the Restaurant is an "employer" engaged in "commerce" suffices to plead the element requiring her to prove that the Restaurant had gross sales exceeding $500,000. DE 36 at 2 (citing case law). I respectfully disagree: the allegation that the Restaurant is an employer engaged in commerce is no more than the assertion of a legal conclusion; it must be (but is not) supported by some non-conclusory factual allegation. Likewise, I respectfully disagree with Gunawan's argument that I can infer that the Restaurant engaged in interstate commerce simply by virtue of the fact that it sells raw fish. *See id.* For reasons I have explained elsewhere, *see Huerta v. Victoria Bakery*, 2012 WL 1100647, at *8 (E.D.N.Y. Feb. 17, 2012) (report and recommendation), *analysis rejected in pertinent part*, 2012 WL 107655

---

[5]  Gunawan does not assert, as an alternative basis for FLSA coverage, that she personally was "engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 206(a), nor could she reasonably do so in light of her allegation that she worked as a waitress. *See* Complaint ¶ 5. Moreover, the facts of this case do not suggest any other basis for the statute's applicability. *See also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 257-58 (E.D.N.Y. 2007) (discussing individual and enterprise coverage).

(E.D.N.Y. Mar 30, 2012),[6] I believe that inferring an interstate commerce nexus from nothing

more than the general description of an employer's business – however likely the conclusion may

seem – is in tension with both the presumption against default and the purpose of Federal Rule of

Civil Procedure 55.[7] Moreover, the inference of a nexus to interstate commerce seems particularly

shaky with respect to a restaurant that sells raw fish – a product that by its nature lends itself, albeit

not inevitably, to local sourcing.

However, despite the Complaint's insufficiency, I nevertheless conclude that under the

unusual circumstances of this case – in which the Restaurant defaulted after a full and fair

opportunity to test the Complaint's sufficiency – the record suffices to find the FLSA applicable. In

its Answer, the Restaurant admitted the existence of federal jurisdiction over the FLSA claims and

contested the "enterprise" allegation only to the extent it asserted a legal conclusion – it did not

---

[6]  Although a district judge of this court rejected that portion of my analysis in *Huerta*, that ruling is not binding precedent. *See, e.g.*, *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 & n. 4 (2d Cir. 2008) (citing cases).

[7]  *See also Jones v. E. Brooklyn Servs. Corp.,* 2012 WL 909830 (E.D.N.Y. Feb. 28, 2012) (Gold, C.M.J.) (recommending the denial of a default judgment motion where the complaint contained "only conclusory statements about interstate commerce"), *adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012); *Day An Zhang v. L.G. Apparel, Inc.*, 2011 WL 900183 (E.D.N.Y. Feb. 18, 2011) (Gold, C.M.J.) (recommending the denial of a default judgment motion where the complaint "allege[d] only in conclusory terms and without any factual support whatsoever that defendants [we]re enterprises subject to the requirements of the FLSA or that [the plaintiff was] individually covered under the FLSA."), *adopted,* 2011 WL 900950 (E.D.N.Y. Mar. 15, 2011) (Matsumoto, J.); *but see, e.g.*, *Huerta v. Victoria Bakery*, 2012 WL 1107655, at *1-3 (E.D.N.Y. Mar. 30, 2012) (finding it was "inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York"); *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 88-89 (E.D.N.Y. 2010) (holding that the relevant standard is met "where the employer's business consumed products in the course of operation"); *Maribel Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 118, 121 (E.D.N.Y. 2011) (Seybert, J., adopting analysis of Tomlinson, M.J.) (finding that it was "logical to infer …that the cleaning supplies utilized by [janitors] originated outside of New York."); *Shim v. Millennium Grp.*, 2009 WL 211367, at *3 (E.D.N.Y. Jan. 29, 2009) (Block, J.) (presuming that employees handled goods or materials moved in interstate commerce because "it is simply inconceivable that none of the … custodial … supplies … originated outside of New York").

deny the underlying assertion of fact. *See* DE 5 (Answer) ¶ 14.[8] Moreover, at the conclusion of discovery, the Restaurant did not seek summary judgment in its favor on the ground that it is not a covered "enterprise" for purposes of the FLSA, nor did it oppose Gunawan's motion on such grounds. Accordingly, I conclude that the Restaurant has forfeited any contention that Gunawan is not entitled to the protection of the FLSA.

2.    Timeliness Of The FLSA Claims

a.    Statute Of Limitations

As mentioned above, the FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for "'a cause of action arising out of a willful violation.'" *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)). "The fact that Congress did not simply extend the limitations period to three years, but instead adopted a two-tiered statute of limitations, makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). The employee bears the burden of proving willfulness, which requires a factual showing that the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (quoting *McLaughlin*, 486 U.S. at 133).

---

[8] I recognize, of course, that the interstate commerce nexus is a non-jurisdictional element of the FLSA claim, and that the admission of jurisdiction is therefore not dispositive. Nevertheless, the Restaurant's admission of jurisdiction, combined with other aspects of the record, suggest that the Restaurant itself chose not to avail itself of the opportunity to contest the FLSA's coverage on the grounds that it lacked sufficient sales volume or a sufficient nexus with interstate commerce, and that it thereby forfeited any defense on such grounds.

11

The FLSA's limitations period, like most such statutory provisions, creates an affirmative defense that is forfeited if not raised in a defendant's answer or an amendment thereto. *See Day v. McDonough*, 547 U.S. 198, 202 (2006); *Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 536 (S.D.N.Y. 1998). The Restaurant has therefore forfeited, by virtue of its default, any argument that Gunawan has failed to establish its willfulness for purposes of the limitations period – an argument, it is worth observing, that the Restaurant in any event never made while it was still participating in the case and had the opportunity to move for partial summary judgment after exchanging discovery with Gunawan. *See*, *e.g.*, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008) (noting that "the law typically treats a limitations defense as an affirmative defense ... subject to rules of forfeiture and waiver"); *Day*, 547 U.S. at 202 ("Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto.") (citing, *inter alia*, Fed. R. Civ. P. (8)(c)); *Davis*, 810 F.2d at 44 (statute of limitations "is a personal defense that is waived if not promptly pleaded"); *Brock v. Wackenhut Corp.*, 662 F. Supp. 1482, 1487 (S.D.N.Y.1987) (FLSA statute of limitations period is "not a substantive condition precedent to the maintenance of a cause of action, but procedural limitation on relief that must be pleaded as an affirmative defense").

Gunawan has established the Restaurant acted willfully. The Complaint alleges that the Restaurant "knew that nonpayment of minimum wage, nonpayment of overtime, and/or improperly retaining [Gunawan's] tips would … violate federal and state laws[.] " Complaint ¶ 7; *see also* DE 26-3 at 2 (Restaurant's admission, pursuant to Local Civil Rule 56.1, that it was "aware of the FLSA minimum wage and overtime requirements" during the period of Gunawan's employment). Despite this knowledge, the Restaurant nevertheless "required [Gunawan] to share

her tips with the kitchen" and failed to pay her "minimum wages for all hours worked, including overtime." Complaint ¶¶ 7, 12. These allegations – particularly when considered in conjunction with Gunawan's allegation that she was paid a mere $500 for over 60 hours of work each month – are sufficient to demonstrate that the Restaurant willfully violated the FLSA. *See Leon v. Pelleh Poultry Corp.*, 2011 WL 4888861, at *2 (S.D.N.Y. Oct. 13, 2011); *Damassia v. Duane Reade, Inc.*, 2005 WL 1214337, at *2 (S.D.N.Y. May 20, 2005); *Maldonado v. La Nueva Rampa*, 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012). I therefore conclude that the FLSA's three-year statute of limitations applies, and that Gunawan may recover on her federal claims for unpaid wages that accrued on or after November 16, 2006.

    b.    Equitable Tolling

        To the extent Gunawan asserts FLSA claims that accrued prior to November 16, 2006, she necessarily invokes the doctrine of equitable tolling. In support of that theory, Gunawan relies on her allegation that the Restaurant failed to discharge its legal obligation to post a notice informing its employees of their rights. DE 33-1 (Memorandum of Law) ("Memo") at 8-9. That fact, without more, does not suffice, as this court has already ruled, and as is therefore the law of this case. *Gunawan*, 2011 WL 3841420, at *2; *see Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case") (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).[9] To invoke equitable tolling, Gunawan must demonstrate that the Restaurant, in addition

---

[9] A limited exception to the doctrine applies "if the court is 'convinced that [its prior decision] is clearly erroneous and would work a manifest injustice.'" *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (quoting *Arizona*, 460 U.S. at 618 n.8). While I recognize that a split exists within this circuit as to whether an employer's failure to post a notice of worker rights is sufficient to entitle its employees to equitable tolling under the FLSA, the mere existence of such a disagreement does not render the court's prior ruling "clearly erroneous." *Compare*, *e.g.*, *Chen v. Grand Harmony*

to failing to post the notice of rights, also engaged in "some sort of deception" that kept Gunawan from understanding and asserting her rights. Because she has not done so, I conclude that she is not entitled to equitable tolling.

### 3.  Timeliness Of NYLL Claims

The limitations period for violations of the relevant provisions of the New York Labor Law is six years. *See* NYLL § 663(3). All of Gunawan's claims accrued within the six year period preceding the filing of the Complaint, and therefore all of her state law claims are timely.

### C.  Damages

Gunawan requests damages in the amount of $69,756.48 (including unpaid wages, improperly withheld tips, liquidated damages, spread-of-hours compensation, and prejudgment interest), $43,825.00 in attorneys' fees, and $1,069.50 in costs. Memo at 18, 21. In support of that request, Gunawan has submitted a memorandum of law, declarations from herself and her attorney, and an itemized statement of her attorneys' work.

As a preliminary matter, when an employer fails to maintain accurate records or where, as here, no records have been produced as a consequence of a defendant's default, courts have held that the "plaintiff['s] recollection and estimates of hours worked are presumed to be correct." *Zeng Liu v. Jen Chu Fashion Corp.*, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004); *see also Mt. Clemens Potter Co.*, 328 U.S. at 687-88 (shifting the burden of proof); *Chao v. Vidtap*, 196 F. Supp. 2d 281, 293-94 (E.D.N.Y. 2002) (finding plaintiff's testimony to be sufficient to establish

---

*Rest., Inc.*, 2011 WL 4703074, at *2 (S.D.N.Y. Aug. 10, 2011) (employer's failure to post notice sufficient to toll limitations period), and *Saunders v. City of New York*, 594 F. Supp. 2d 346, 359 (S.D.N.Y. 2008) (same), *with Cao v. Wu Liang Ye Lexington Rest., Inc.*, 2010 WL 4159391, at *1 (S.D.N.Y. Sept. 30, 2010) (equitable tolling not appropriate where plaintiffs were not informed of their rights but did not complain of "anything more, e.g., some sort of deception") and *Copantitla*, 788 F. Supp. 2d at 319 (same). I do not purport to provide any independent analysis of the issue; like Gunawan, I am bound by the prior ruling in this case.

unpaid wages). Thus, despite the fact that Gunawan has not submitted any documents such as pay stubs, tax returns, or bank statements as support for her allegations about the numbers of hours she worked each week, the wages and tips she received, or the precise duration of her employment, I will presume those allegations based on Gunawan's recollection to be correct, and I rely on them in the analysis that follows. Accordingly, for purposes of calculating damages, I assume that Gunawan was paid a flat rate of $500 per month (or $115.39 per week), that she worked 67 hours, that she received $650 in tips each week, and that the period of her employment began on May 10, 2006. *See* Gunawan Aff. ¶¶ 3, 5, 9, 11. Since Gunawan alleges only that she ended her employment during the month of June 2007, but has not proved the specific date of her separation from employment within that month, I must assign one for purposes of calculating her damages. In the interest of simplicity, I will assume that her employment ended on June 9, 2007, exactly 13 months after it began.

### 1.    Unpaid Minimum Wages And Unlawful Tip Deductions

The FLSA required the Restaurant to pay Gunawan a minimum hourly wage of $5.15 at all relevant times. *See* 29 U.S.C. § 206(a)(1). New York law required more; specifically, the Restaurant had an obligation to pay Gunawan a minimum hourly wage of $6.75 prior to 2007, and $7.15 thereafter. *See* NYLL § 652; 12 NYCRR § 146–1.2. I calculate the wages to which Gunawan is entitled at the latter rates. *See Rodriguez v. Queens Convenience Deli Corp.,* 2011 WL 4962397, at *2 (Oct. 18, 2011) (the lower hourly minimum wage required under federal law does not preempt state law, and thus the plaintiff should be awarded damages on wage claims based on the higher minimum wage under state law); *Wicaksono v. XYZ Corp.*, 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011) (same). By paying Gunawan a flat monthly rate of $500 per month and

requiring her to work 67 hours per week, the Restaurant effectively paid an hourly wage of $1.87, far below the required rates.

The Restaurant cannot escape liability for that underpayment by claiming a credit for the tips Gunawan received. To take advantage of such a credit, an employer must inform its employees that tips are being credited against their wages. *See* 29 U.S.C. § 203(m) & 12 NYCRR 146-1.3. In addition, the employer must refrain from withholding any portion of the employees' tips or requiring some employees to share the tips they receive with non-service employees, such as managers or kitchen staff, who do not customarily and regularly receive tips. *Wicaksono*, 2011 WL 2022644, at *5; *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 229-30 (S.D.N.Y. 2002); *see also Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. Mar. 30, 2006). The Restaurant failed to satisfy either of those requirements: it never informed Gunawan about its tip credit policy, and it required her to give ten percent of her tips to the chef, who had no direct interaction with customers. Gunawan Aff. ¶ 10. I therefore find that Gunawan is entitled to recover damages calculated without reference to any tips she received. I further find that she is entitled to the reimbursement of the portion of her tips the Restaurant improperly required her to share with the chef. *See Wicaksono*, 2011 WL 2022644, at *5 (citing *Cao*, 2010 WL 4159391, at *4).

Gunawan was employed by the Restaurant for a period of 56.6 weeks (rounded to the nearest tenth) between May 10, 2006 and June 9, 2007. The applicable minimum wage was $6.75 during the first 33.7 weeks of Gunawan's employment, from May 10, 2006 to December 31, 2006, and $7.15 for the remaining 22.9 weeks, from January 1, 2007 to June 9, 2007. *See* NYLL § 652. Multiplying the number of hours Gunawan worked each week (67) by the number of weeks in each period, I find that Gunawan worked 2,257.9 hours between May 10, 2006 and December 31, 2006,

16

and 1,534.3 hours between January 1, 2007 and June 9, 2007. Multiplying the total hours for each period by the applicable minimum wage, I find that Gunawan should have been paid $15,240.83 and $10,970.25 in wages, respectively, for a total of $26,211.08. Subtracting from this total the $6,500 in wages that Gunawan actually received, I calculate that Gunawan is entitled to damages for unpaid minimum wages in the amount of $19,711.08. In addition to this amount, Gunawan is entitled under NYLL § 196-d to reimbursement for unlawful deductions to her tips in the amount of $3,679.00, which I calculate by multiplying the total tips Gunawan received each week ($650) by the number of weeks she was employed at the restaurant (56.6) and dividing the product ($36,790) by ten, to reflect the fact that the Restaurant improperly retained ten percent of Gunawan's tips. Combining these amounts, I conclude that Gunawan is entitled to a total damage award of $23,390.08 for unpaid minimum wages and unlawful tip deductions.

        2.    <u>Unpaid Overtime Wages</u>

Both federal and state law require that employers pay employees a 50 percent premium for their overtime hours – that is, the hours in excess of 40 that they worked in each work week. *See* 29 C.F.R. § 778.105; 12 NYCRR § 146-1.4. Gunawan has demonstrated that she that she worked 67 hours each week. Gunawan Aff. ¶ 5. She is therefore entitled to recover 50 percent of the minimum wage rate for the 27 overtime hours she worked each week.

As discussed above, the applicable minimum wage during the first 33.7 weeks of Gunawan's employment was $6.75, and it was $7.15 during the remaining 22.9 weeks. *See* NYLL § 652. Gunawan is entitled to an overtime premium equal to 50% of these rates, or $3.38 and $3.58, respectively, for every hour that she worked over 40 hours. Multiplying the number of hours that she worked in excess of 40 each week (27) by the number of weeks in each period, I find that

Gunawan worked 909.9 overtime hours between May 10, 2006 and December 31, 2006, and 618.3 hours between January 1, 2007 and June 9, 2007. Multiplying the total overtime hours for each period by the applicable overtime premium rate, I find that Gunawan is entitled to $3,075.46 and $2,213.51 in overtime wages, respectively, for a total award of $5,288.97.

       3.     <u>"Spread-Of-Hours" Damages</u>

The NYLL's "spread-of-hours" provision entitles Gunawan to one additional hour of pay at the minimum hourly wage for each day she worked over ten hours. NYLL § 650 *et seq.*; 12 NYCRR § 142-2.4. Gunawan alleges that that she worked more than ten hours five days per week during the entire course of her employment with the Restaurant. Gunawan Aff. ¶ 5. She is therefore owed $33.75 (5 x $6.75) per week for the first 33.7 weeks of her employment (totaling $1,137.38), and $35.75 (5 x $7.15) per week for the remaining 22.9 weeks (totaling $818.68). Adding the amounts owed for the two periods, I conclude that Gunawan is entitled to an award of spread-of-hours damages in the total amount of $1,956.06.

       4.     <u>Liquidated Damages</u>

Both federal and state law provide for an additional award of liquidated damages to a plaintiff who establishes that her employer has failed to pay required wages. However, the relevant statutory provisions operate in different ways. Specifically, an employer who violates the federal minimum wage and overtime provisions "shall be liable" to employees for unpaid minimum wages and overtime in "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).[10] In

---

[10] While an award of liquidated damages is the norm, the FLSA provides that a court may deny such damages if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith[.]" 29 U.S.C. § 260. The employer must establish its good faith by "plain and substantial evidence." *Reich*, 121 F.3d at 71 (internal citations omitted). Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages.

contrast, the applicable liquidated damages provision under state law provides for an award only if the failure to pay was willful, and then only at a rate of 25 percent of the wages owed (although it is more generous than its federal counterpart is to the extent that it applies to unpaid regular wages, unlawful withholdings from tips, and unpaid "spread-of-hours" wages, in addition to unpaid overtime). NYLL § 198.

District courts in this circuit have disagreed as to whether a plaintiff may secure cumulative awards of liquidated damaged under both statutes. *Compare*, *e.g.*, *Greathouse v. JHS Sec., Inc.*, 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) (collecting cases, and concluding that a cumulative award is not permitted) *with Wicaksono*, 2011 WL 2022644, at *7 (collecting cases and concluding that a cumulative award is permitted).[11] I am persuaded that the two statutory provisions serve different purposes and are therefore not mutually exclusive: the liquidated damages provision under the FLSA is compensatory, rather than punitive, while the comparable state law provision is a penalty designed to deter the willful withholding of wages. *See*, *e.g.*, *Reilly v. Natwest Mkts. Grp. Inc*., 181 F.3d 253, 265 (2d Cir. 1999) (citing *Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115, 116 (App. Div. 1980), *aff'd*., 52 N.Y.2d 994 (1981)); *Cao*, 2010 WL 4159391, at *5. Moreover, the New York provision allows for recovery of liquidated damages plainly not available under federal law; namely, an amount equal to 25 percent of damages available only

---

[11] The disagreement appears to be transitory: New York has since amended its statute to allow for liquidated damages equal to 100 percent of the unpaid wages and to make them presumptively available, subject to an employer's affirmative showing of good faith to rebut the presumption. NYLL § 198(1-a) (effective Apr. 25, 2011); *see Paz v. Piedra*, 2012 WL 121103, at *12 n.10 (S.D.N.Y. Jan. 12, 2012). To the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms.

under New York law, such unpaid spread-of-hours wages. Accordingly, I recommend an award of liquidated damages under both statutes.[12]

Liquidated damages awards under the FLSA are equal to the amount owed in federal unpaid and overtime wages. *See Rodriguez*, 2011 WL 4962397, at *4. Although Gunawan is not entitled to receive a separate award of back wages under the FLSA because it would duplicate the award received under NYLL, she is nevertheless entitled to an award of federal liquidated damages based on the Restaurant's failure to pay wages in accord with the FLSA. *See*, *e.g.*, *id.* at *4; *Wicaksono*, 2011 WL 2022644, at *7. "To calculate federal liquidated damages in a case like this one where NYLL provide[s] the greatest relief for compensatory damages, the Court calculates 'the amount of actual damages that would have been awarded had the federal minimum wage rate applied.'" *Angamarca v. Pita Grill 7 Inc.*, 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012) (quoting *Wicaksono*, 2011 WL 2022644, at *7).

As previously discussed, I apply the FLSA's three-year statute of limitations to Gunawan's federal claims. Gunawan may therefore recover FLSA liquidated damages for only those minimum wage and overtime violations that occurred on or after November 16, 2006, three years prior to the date that she filed the Complaint. I have calculated the regular and overtime wage damages flowing from the Restaurant's failure to pay Gunawan at the minimum hourly rate prescribed under federal law to be $7,912.22; I therefore award that same amount in liquidated damages under the FLSA. My calculations are summarized in the following table:

---

[12] I have previously reached a contrary conclusion, which I now believe to have been erroneous in light of the case law establishing the different purposes of the two damages provisions. *See Chun Jie Yin*, 2008 WL 906736, at *7 (order adopting report and recommendation).

| Time Period | Number of Weeks | Minimum Wage Rate | Overtime Premium | Total Hours | Overtime Hours | Minimum Wages Plus Overtime | Wages Paid (at $115.39 per week) | Wages Owed |
|---|---|---|---|---|---|---|---|---|
| 11/16/06 – 06/09/07 | 29.5 | $5.15 | $2.58 | 1798.3 | 796.5 | $11,316.22 | $3404.00 | $7,912.22 |

Gunawan may also recover NYLL liquidated damages equal to 25 percent of her damages arising under state law. As previously discussed, those damages consist of $19,711.08 in unpaid minimum wages, $3,679.00 in unlawful tip deductions, $5,288.97 in unpaid overtime wages, $1,956.06 in spread-of-hours damages, for a total damage award of $30,635.11. Gunawan is entitled to liquidated damages equal to 25 percent of that total, or $7,658.78. Adding the latter amount awarded under state law to the $7,912.22 in liquidated damages I award under the FLSA, I find that Gunawan is entitled to an award of liquidated damages under both statutes in the total amount of $15,571.00.

5. Prejudgment Interest

Gunawan seeks an award of pre-judgment interest on her state law claims. "Unlike under the FLSA, '[p]re-judgment interest and liquidated damages under [New York] Labor Law are not functional equivalents[,]' ... because 'the liquidated damages provided for in the New York Labor Law are punitive in nature' rather than compensatory." *Angamarca*, 2012 WL 3578781, at *9 (quoting *Yu G. Ke v. Saigon Grill,* 595 F. Supp. 2d 240, at 262 (S.D.N.Y. 2008)). Therefore, prejudgment interest may be applied to violations of the NYLL for which liquidated damages have already been provided under that statute. *Reilly*, 181 F.3d at 265. However, where a plaintiff has already received an award of FLSA liquidated damages, the plaintiff has been compensated for the delay in receiving wages that should have been paid, and "is therefore entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed." *Angamarca*, 2012 WL 3578781, at *9 (quoting *Santillan*

*v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011)). Accordingly, Gunawan is entitled to

prejudgment interest only as to her claims for which no FLSA liquidated damages were awarded,

including her minimum wage and overtime claims which accrued prior to November 16, 2006, as

well as her claims for lawful tip deductions and unpaid spread-of-hours compensation. I calculate

the minimum wage and overtime damages which accrued prior to November 16, 2006, as follows:

| Time Period | Number of Weeks | Minimum Wage Rate | Overtime Premium | Total Hours | Overtime Hours | Minimum Wages Plus Overtime | Wages Paid (at $115.39 per week) | Wages Owed |
|---|---|---|---|---|---|---|---|---|
| 5/10/06 - 11/15/06 | 27.1 | $6.75 | $3.38 | 1815.7 | 731.7 | $14,729.13 | $3,127.07 | **$11,602.06** |

Adding to this figure the amounts Gunawan is owed for unlawful tip deductions ($3,679.00) and

spread-of-hours damages ($1,956.06), I conclude that Gunawan is entitled to prejudgment interest

on a principal amount of $17,237.12.

The statutory annual interest rate interest is nine percent. N.Y. C.P.L.R. § 5004. Gunawan

proposes to calculate such interest from the midpoint of her period of employment at the

Restaurant. Memo. at 18 fn. 9. This method of calculating interest is appropriate. Under the

relevant statutory provision, "[w]here … damages were incurred at various times, interest shall be

computed upon each item from the date it was incurred or upon all of the damages from a single

reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). A court has discretion to choose a

reasonable accrual date. *Koylum, Inc. v. Peksen Realty Corp.*, 357 F. Supp. 2d 593, 597 (E.D.N.Y.

2005). The median date between the earliest ascertainable date the cause of action existed and the

date the action was filed is the one most commonly used. *See*, *e.g.*, *id.*; *Chun Jie Yin*, 2008 WL

906736, at *8; *Pavia v. Around The Clock Grocery, Inc.*, 2005 WL 4655383, at *8 (E.D.N.Y. Nov.

15, 2005). Because the damages here accrued at an essentially regular rate over the entire period of

each plaintiff's employment, and because the interest rate is simple rather than compounded, such

methodology is appropriate, and produces a result virtually identical to a laborious calculation of interest owed on each week's unpaid wages.

I calculate that the midpoint of Gunawan's employment was November 23, 2006. Applying a nine percent annual interest rate to the principal amount of $17,185.59 for the period from the that date through the date of this order, September 24, 2012, I calculate interest as follows (taking into account that the current year is a leap year and thus has 366 days): $17,237.12 x 0.09 (yearly interest) x (5 + 306/366) = $9,026.39. I therefore award Gunawan statutory prejudgment interest in the amount of $9,053.73.

### 6.   Attorneys' Fees And Costs

Gunawan seeks an award of attorneys' fees and costs in the amount of $44,894.50. Memo at 21. Fee shifting is authorized under both federal and state law. *See* 29 U.S.C. § 216(b); NYLL § 663(1). When fixing a reasonable rate for attorneys' fees, courts should consider "the rate a paying client would be willing to pay," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008), and apply the prevailing market rates for attorneys of similar expertise providing comparable services. *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998). The fee is then calculated by setting a reasonable hourly rate, and multiplying that rate by the number of hours reasonably expended litigating the case. *Joe Hand Promotions, Inc. v. Martinez*, 2008 WL 4619855, at *7 (S.D.N.Y. Oct. 17, 2008); *see Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008). A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d

1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckhart,* 461 U.S. 424, 433 (1983); *Levy v. Powell,* 2005 WL 171992, at *6 (E.D.N.Y. Jul. 22, 2005). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich,* 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir. 1992)).

### a.  Hourly Rates

Gunawan seeks reimbursement for her counsel at the following hourly rates: $350 for partner D. Maimon Kirschenbaum ("Kirschenbaum"), who has 5 years of experience in the relevant practice area; $300 for associate Matthew Kadushin ("Kadushin"), who has 12 years of litigation experience and three years of experience in the relevant practice area; and $125 for paralegals. Memo. at 21; DE 33-2 (Affidavit of Matthew Kadushin) ("Kadushin Aff.") ¶¶ 11-14.[13]

In light of the relatively straightforward nature of Gunawan's FLSA and the NYLL claims, I find that the level of compensation sought for partner Kirschenbaum exceeds the reasonable rates of compensation prevailing in this district for matters of a similar level of complexity. *See Labarbera v. Frank J. Batchelder Transp. LLC*, 2009 WL 24051, (E.D.N.Y. Feb. 2, 2009) (reducing partner rates from $300 to $275 in ERISA action that "raised no novel or complex issues of law"); *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (reducing partner rate to $250 in "relatively simple" FLSA default action); *LaBarbera v. J.E.T. Resources, Inc.,* 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (awarding $250 for partners for time logged on a "simple and straightforward" ERISA matter); *see also Alveranga v. Winston,* 2007 WL 595069,

---

[13]  Gunawan also seeks $350 per hour for the work of partner Diane Hester ("Hester"). Since, as discussed in the next section, I decline to award for fees for any of the hours worked by Hester, I make no finding regarding the reasonableness of her requested rate.

at *7 (E.D.N.Y. Feb. 22, 2007) (noting that "[r]ates awarded ... in cases not involving complex issues tend, on average, to be lower"). The level of compensation sought for associate Kadushin, who has only three years of relevant practice experience, is likewise excessive. *See*, *e.g.*, *La Barbera v. VLF11 Mgmt. Corp.*, 2012 WL 157109, at *7 (E.D.N.Y. Apr. 3, 2012) (Awarding rate of $215 per hour for sixth year associate with three years of relevant practice experience); *Trs. of the Rd. Carriers 707 Welfare Fund v. Goldberg*, 2009 WL 3497493, at * (E.D.N.Y. Oct. 28, 2009) (awarding $250 per hour for senior associate with seven years relevant practice experience); *Trs. of Local 531 Pension Plan v. Corner Distribs., Inc.,* 2008 WL 2687085 (E.D.N.Y. Jul. 8, 2008) (awarding rates between $200 and $250 for seventh and eighth year associates). I therefore award fees based on hourly rates of $275 for Kirschenbaum and $225 for Kadushin.

Gunawan's requested rate of $125 per hour for the work of paralegals is significantly higher than the typical rate for paralegals in in this district. *See*, *e.g.*, *Finkel v. Detore Elec. Const. Co., Inc.,* 2012 WL 1077796, at *12 (E.D.N.Y. Mar. 6, 2012) (reducing paralegal billing rate from $90 to $80); *Ferrara v. CMR Contracting LLC*, 2012 WL 987497, at *8 (E.D.N.Y. Mar. 6, 2012) (finding a rate of $90 per hour for paralegal work "excessive" and reducing to $75)*; Finkel v. Jones Lang LaSalle Ams., Inc.*, 2009 WL 5172869, at *5 (E.D.N.Y. Dec. 30, 2009) (finding $80 per hour for paralegals reasonable); *Finkel v. Rico Elec., Inc.,* 2009 WL 3367057, at *7 (E.D.N.Y. Oct. 16, 2009) (awarding $75 to $80 for paralegals). In the absence of any explanation for a greater award here, I will award fees for the work of paralegal assistants at the hourly rate of $75.

b.   <u>Hours Expended</u>

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of

the work done, the hours, and the dates. *Carey*, 771 F.2d at 1147-48. The absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances. *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010). Inadequate documentation is grounds for reduction of a fee award. *Hensley*, 461 U.S. at 433; *Levy*, 2005 WL 1719972, at *6.

Gunawan seeks reimbursement for a total of 135.5 hours of time expended by her attorneys and paralegal assistants. Kadushin Aff. ¶ 14. Gunawan's submissions sufficiently document the number of hours her attorneys have billed. But while the hours are adequately documented, I conclude that reimbursement for the bulk of those hours is not justified in the context of the present motion. Specifically, I decline to award fees for the 78.7 hours spent by Gunawan's attorneys litigating her unsuccessful summary judgment motion.[14] As previously discussed, that motion was denied in its entirety by Judge Carter, who found that there were triable issues of fact with respect to the amount of wages Gunawan actually received from the Restaurant, whether the FLSA's three year statute of limitations applies to Gunwan's claims, and whether the statute of limitations should be equitably tolled. *Gunawan*, 2011 WL 3841420, at *2-4. I see no reason why the Restaurant, which has already borne the cost of litigating against Gunawan's motion in the first instance, should now be made to reimburse Gunawan for the fees she incurred in prosecuting that motion. Accordingly, I decline to award any fees in this regard. With respect to the remaining 56.8 hours expended by Gunawan's attorneys, I am satisfied that those hours are justified and award fees accordingly.

---

[14] These include all of the hours worked by Hester, and 4.2 hours worked by Kirschenbaum between October 4, 2010 and August 26, 2011.

Of the 10.2 hours of paralegal time for which Gunawan requests reimbursement, only 9.9 are documented in Gunawan's submissions. *See* DE 33-5 at 5-6. Those 9.9 hours appear to be justified, and I therefore award fees with respect to those hours.

> c.    Total Fee Reimbursement

Based on foregoing, I award Gunawan a total of $12,252.50 in attorneys' fees, consisting of $5,637.50 for 20.5 hours of work performed by Kirschenbaum, $5,872.50 for 26.1 hours of work performed by Kadushin, and $742.50 for 9.9 hours of work performed by paralegals.

> d.    Total Litigation Costs

Gunawan seeks reimbursement of a total of $1,069.50 in costs, including $350.00 for filing the complaint, $95.00 in service of process fees, $474.50 in expenses related to the deposition of a defense witness, and $150.00 related to the "cancellation of [a] deposition." DE 33-3 at 7. Gunawan has provided no information regarding the cancelled deposition, and I therefore decline to award her the associated costs. The remaining three items for which Gunawan seeks reimbursement are reasonable and adequately documented. I therefore award Gunawan litigation costs in the total amount of $919.50.

III.   Conclusion

For the reasons set forth above, I grant plaintiff Fanny "Fei Fei" Gunawan's motion and award judgment against defendant Sake Sushi Restaurant, Inc. in the total amount of $68,431.84; consisting of $19,711.08 in unpaid minimum wages; $3,679.00 in unlawful tip deductions; $5,288.97 in unpaid overtime wages; $1,956.06 in spread-of-hours damages; $15,571.00 in liquidated damages; $9,053.73 in prejudgment interest; $12,252.50 in attorneys' fees; and $919.50 in costs. I respectfully direct the Clerk to enter judgment accordingly and thereafter to close this

case. I further direct the plaintiff to serve a copy of this Memorandum and Order on the defendant

by certified mail no later than September 28, 2012.

   SO ORDERED.

Dated: Brooklyn, New York
   September 24, 2012

                /s/
            JAMES ORENSTEIN
            U.S. Magistrate Judge